**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**ALLIED ESQUIRE GROUP, INC.**                                               **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO. 2:10CV197KS-MTP**

**BYRD & ASSOCIATES, PLLC**
**and ISAAC K. BYRD, JR.**                                               **DEFENDANTS**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Plaintiff ("Allied Esquire" or the "Plaintiff") on July 1, 2011 moved for summary judgment with Exhibits (**Doc. 53**) and a supporting Brief (**Doc. 54**).  The Defendants (the "Byrd Firm") and ("Byrd") failed to respond to Plaintiff's Motion and Brief.

Under Local Rule 7(b)(3)(E), the Court may grant a motion as unopposed if a party fails to respond to a motion within the time allowed, other than a dispositive motion. Therefore, the Court does not grant summary judgment by default.  Instead, the Court has reviewed the Motion and supporting submissions, and finds that the Plaintiff's Motion is well taken and should be granted.  *Johnson v. Pettiford*, 442 F.3d 917, 918-19 (5th Cir. 2006) (summary judgment not awarded by default); *John v. State of La.*, 757 F.2d 698, 708 (5th Cir. 1985); *Harrell v. St. John*, 2011 WL 2144414, *4 (S.D. Miss. 2011) (Starrett, J.) (citing, *John v. State of La.*).

The Court makes these findings of undisputed facts, based on the Defendants' admissions in the Defendants' Answers (**Docs. 3 and 4**), of which the Court takes judicial notice; the Defendants' deemed admissions to Requests For Admission, to which there was no response; admissions in the Defendants' deposition; and based on other submissions that support the Plaintiff's summary judgment motion.

**Findings Of Fact**

1.      This is a civil action for legal and equitable relief, including declaratory relief and claims for damages,  restitution, and indemnity for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, conversion, and a constructive trust, all in connection with a written contract captioned a "Funding Agreement" signed by the Defendants, Byrd & Associates, PLLC (the "Byrd Firm") and Isaac K. Byrd, Jr. ("Byrd"). Byrd also signed the contract in his personal capacity.

2.      This is a straight forward case where a law firm and a lawyer obtained an advance of money from the Plaintiff under a Funding Agreement; agreed to a payment obligation from the Defendants'  on going legal cases; agreed to establish a specific trust fund for the Plaintiff from recoveries in the legal cases; agreed to safeguard the trust fund money for the Plaintiff; agreed to repay the Plaintiff within 3 business days from the trust fund money after giving the Plaintiff 2 day notice of recoveries in the cases; and then knowingly and willfully kept and converted the money for their own purposes, even after suit was filed.

3.      The Court has jurisdiction under 28 U.S.C. §1332(a)(1), because there is complete diversity of citizenship between the parties and the amount in controversy, excluding interest and costs, exceeds $75,000.00.

**A.  Summary Judgment Record.**

4.      Allied Esquire's Complaint attached a contract captioned "Funding Agreement" (the "contract") as Ex. 1.  Both Defendants executed the contract and agreed to its terms.  (**Plaintiff's Motion, Ex. 1; Doc. 53-1**).

5.      The Defendants' Answers (**Docs. 3 and 4**) admitted paragraphs 1 through 15 and 18 of the Allied Esquire's Complaint.  Under Fed.R.Civ.P. 8(b)(6), the effect of

failing to deny an allegation in the Complaint is that the allegation, other than one relating to the amount of damages, is admitted.   The summary judgment record includes the contract (**Plaintiff's Motion, Ex. 1; Doc. 53-1**); Requests For Admission (**Plaintiff's Motion, Ex. 2; Doc. 53-2**); the Defendants' deposition (**Plaintiff's Motion, Ex. 3; Doc. 53-3**); two Declarations (**Plaintiff's Motion, Exs. 4 and 5; Docs. 53-4 and 53-5**); and the following admissions.

      6.     The Court takes judicial notice[1] of the Defendants' admissions in the Defendants' Answers (**Docs. 3 and 4**), which admit the following allegations in paragraphs 1 through 15 and 18 of Allied Esquire's Complaint:

      a.     The Plaintiff is a corporation organized under the laws of Delaware with its principal place of business in New York at 26 Court Street, Brooklyn, New York 11242.  (**Complaint, para. 1**).

      b.     The Defendants are:

      i.     Byrd & Associates, PLLC (the "Byrd Firm"), a professional limited liability company organized under Mississippi law, whose members are adult resident citizens of Mississippi; and

      ii.     Isaac K. Byrd, Jr. ("Byrd"), an adult resident citizen of Mississippi who may be served with process at 427 East Fortification Street, Jackson, Mississippi 39202.  (**para. 2**).

      c.     This is a civil action for declaratory relief; and damages,  restitution, and indemnity for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and conversion, all in connection with a written "Funding Agreement" signed by the Byrd Firm and signed by Byrd in his personal capacity.  (**para. 3**).

      d.     The Court has jurisdiction under 28 U.S.C. §1332(a)(1), because there is complete diversity of citizenship between the parties and the amount in controversy, excluding interest and costs, exceeds $75,000.00.  (**para. 4**).

---

[1]Fed.R.Evid. 201(b)(2) and (c-d); *St. Louis Baptist Temple, Inc. v.* F.D.I.C., 605 F.2d 1169, 1172 (10th Cir. 1979) (the court may take judicial notice of its own docket).

e.    On or about February 23, 2007, the Byrd Firm was a law firm with offices at 427 East Fortification Street, Jackson, Mississippi 39202, where the Byrd Firm continues to operate as a law practice with Byrd as its managing member.  (**para. 5**).

f.    Byrd is an adult resident citizen of Mississippi and a practicing attorney in the Byrd Firm.  Byrd is the founder, managing member, and owner of the Byrd Firm.  The Byrd Firm is vicariously liable for Byrd's acts or omissions done in the course and scope of his work with the Byrd Firm.  (**para. 6**).

g.    On February 23, 2007, the Byrd Firm and Byrd personally executed and signed and entered into a written "Funding Agreement" (the "contract") with the Plaintiff by which the Plaintiff advanced the sum of $450,000.00 to the Defendants in exchange for the Defendants' agreement to repay the money and abide by a "Payment Obligation" from the net cash proceeds from the "Recovery" in lawsuits handled by the Defendants. (**para. 7**).

h.    A true copy of the contract is attached and incorporated as Exhibit 1 to the Complaint.  (**para. 8**).

i.    Under the contract, the Plaintiff advanced the Defendants the sum of $450,000.00 subject to an origination fee, a processing fee, and usage fees.[2]  (**para. 9**).

j.    Under the contract, by executing the contract and receiving the advance paid by the Plaintiff, the Defendants agreed that the Plaintiff had fully performed all of the Plaintiff's obligations under the contract and agreed to the application of New York law to the contract.[3] (**para. 10**).

k.    Under the contract, the Defendants agreed to a "Payment Obligation"[4] to repay the advance of money from the cash proceeds from the "Recovery"[5] in "Lawsuits", as defined by the contract[6], handled by the Defendants in which there was a "Recovery".[7] (**para. 11**).

---

[2]Complaint, Ex. 1, Doc. 53-1, paras. 1.1, 1.2, and 2.1.

[3]*Id.*, Ex. 1, paras. 6.13, 6.18.

[4]*Id.*, paras. 1.4, 2.2.

[5]*Id.*, para. 1.6.

[6]*Id.*, para. 1.5.

[7]*Id.*, para. 1.6.

l.      Under the contract, the Defendants agreed to pay the Plaintiff a sum equal to the payment obligation from the recovery in lawsuits within 3 business days of the Defendants' receipt of the recovery. (**para. 12**).

m.      Under the contract, the Defendants' payment obligation continued until the Defendants had repaid the Plaintiff money advanced plus all applicable fees in full.[8] **(para. 13)**.

n.      Under the contract, the Defendants' payment obligation was 25% of the "Net Cash Receipts" from the recovery in each lawsuit, defined as 25% of the sum of all fees the Defendants received from any source and case expense reimbursements less legal referral fees to third parties.  (**para. 14**).

o.      Under the contract, the Defendants agreed to notify the Plaintiff within 2 business days of the payment of any recovery in each lawsuit, and agreed to hold any recovery in a separate interest bearing trust account for the Plaintiff until the Defendants' payment obligation was paid in full.[9] **(para. 15**).

p.      Under the contract, the Defendants agreed to provide the Plaintiff quarterly reports that contained a case status update for each lawsuit that was the subject of the contract.[10] **(para. 18**).

7.      The summary judgment record also includes the June 14, 2011 combined Fed.R.Civ.P. 30(b)(6) deposition of the Byrd Firm and the individual deposition of Byrd, with exhibits (**Plaintiff's Motion, Ex. 3; Doc. 53-3**), which contains admissions.  The deposition is redacted for private information, and submitted under seal with Court approval.

8.      In the deposition, the Defendants gave oral answers and responses under oath to the Plaintiff's Interrogatories and Requests For Production.  By a May 3, 2011 Order (**Doc. 29**), the Court ordered the Defendants to serve written responses to the Plaintiff's Interrogatories and Requests For Production "on or before May 13, 2011".  (**Doc. 29, at 2**).

---

[8]*Id.*, para. 2.2.

[9]*Id.*, para. 2.3.

[10]*Id.*, para. 6.5.

The Defendants failed to comply with the Court's Order.  Plaintiff's counsel asked the written Interrogatories and Requests For Production as deposition questions in the June 14 deposition.  (**Plaintiff's Motion, Ex. 3; Doc. 53-3, Byrd Depos., at 12-13**).

9.     The summary judgment record also includes admissions from the Plaintiff's Requests For Admission served on March 3, 2011 by hand delivery on the Defendants. (**Plaintiff's Motion, Ex. 2; Doc. 53-2**).  The Defendants failed to respond to the Requests For Admission, and the Requests For Admission are deemed admitted for the purpose of this case.[11]

10.     Paragraphs 9 through 23, and paragraph 26 of the Plaintiff's Motion  are admissions taken from the Defendants Answers, (**Docs. 3 and 4**).  The admissions in paragraphs 24, 25, and 27 through 35 of the Plaintiff's Motion are deemed admissions from the Defendants' failure to respond to Requests For Admission, (**Plaintiff's Motion, Ex. 2; Doc. 53-2**). [The Defendants' Answers show these admissions.]

**B.  Undisputed Facts.**

11.     The Plaintiff is a corporation organized under the laws of Delaware with its principal place of business in New York at 26 Court Street, Brooklyn, New York 11242.

12.     The Defendants are:

a.     Byrd & Associates, PLLC (the "Byrd Firm"), a professional limited liability company organized under Mississippi law, whose members are adult resident citizens of Mississippi; and

b.     Isaac K. Byrd, Jr. ("Byrd"), an adult resident citizen of Mississippi who may be served with process at 427 East Fortification Street, Jackson, Mississippi 39202.

---

[11]Fed.R.Civ.P. 36(a)(3)(A) ("matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves. . . .a written answer or objection. . . ."); *Jarvis v. Pearl River County Sheriff's Dept.*, 2007 WL 4233121 (S.D. Miss. 2007) (Roper, J.); *Hulsey v. State of Texas*, 929 F.2d 168, 171 (5th Cir. 1991); *Amer. Automobile Ass'n. v. AAA Legal Clinic*, 930 F.2d 1117, 1120 (5th Cir. 1991) (Rule 36 admission comparable to admission in pleadings for trial stipulation drafted by counsel).

13.     On or about February 23, 2007, the Byrd Firm was a law firm with offices at 427 East Fortification Street, Jackson, Mississippi 39202, where the Byrd Firm continues to operate as a law practice with Byrd as its managing member.    Byrd is an adult resident citizen of Mississippi and a practicing attorney in the Byrd Firm.   Byrd is the founder, managing member, and owner of the Byrd Firm.   The Byrd Firm is vicariously liable for Byrd's acts or omissions done in the course and scope of his work with the Byrd Firm.

14.     On February 23, 2007, the Byrd Firm and Byrd personally executed and signed and entered into a written "Funding Agreement" (the "contract") with the Plaintiff by which the Plaintiff advanced the sum of $450,000.00 to the Defendants in exchange for the Defendants' agreement to repay the money and abide by a "Payment Obligation" from the "Net Cash Receipts" from the "Recovery" in "Lawsuits" handled by the Defendants.   A true copy of the contract (**Doc. 534**) is attached to the Complaint as Exhibit 1.

15.     Under the contract, the Plaintiff advanced the Defendants the sum of $450,000.00 subject to an origination fee, a processing fee, and usage fees.[12]   Under the contract, by executing the contract and receiving the advance paid by the Plaintiff, the Defendants agreed that the Plaintiff had fully performed all of the Plaintiff's obligations under the contract and agreed to the application of New York law to the contract.[13]

16.     Under the contract, the Defendants agreed to a payment obligation[14] to repay the advance of money from the cash proceeds from the recovery[15] in lawsuits, as defined

---

[12]Ex. 1, **Doc. 53-1**, paras. 1.1, 1.2, and 2.1.

[13]*Id.*, paras. 6.13, 6.18.

[14]*Id.*, paras. 1.4, 2.2.

[15]*Id.*, para. 1.6.

by the contract[16], handled by the Defendants in which there was a recovery.[17]  Under the contract, the Defendants agreed to pay the Plaintiff a sum equal to the payment obligation from the recovery in lawsuits within 3 business days of the Defendants' receipt of the recovery.  Under the contract, the Defendants' payment obligation continued until the Defendants had repaid the Plaintiff money advanced plus all applicable fees in full.[18]

17.     Under the contract, the Defendants' payment obligation was 25% of the net cash receipts from the recovery in each lawsuit, defined as 25% of the sum of all fees the Defendants received from any source and case expense reimbursements less legal referral fees to third parties.

18.     Under para. 1.4 and 2.2 of the contract, the term "Payment Obligation" refers to the amount that the Defendants must repay Allied Esquire upon their receipt of cash proceeds from the "Recovery", which is "25% of the Net Cash Receipts", until the principal and fees are repaid to Allied Esquire.

19.     Paragraph 1.4 of the contract defines "Net Cash Receipts" as "the sum of all fees from any source and case expenses reimbursements" received by the Defendants less legal referral fees to third parties.

20.     Paragraph 1.6 of the contract defines "Recovery" as "any payments or other consideration of any kind, paid to, or for the benefit of" the Byrd Firm and Byrd and their clients who are Plaintiffs in lawsuits "on account of the causes of action giving rise to the 'Lawsuits', whether obtained through 'Lawsuits', or through any later action or proceeding

---

[16] *Id.*, para. 1.5.

[17] *Id.*, para. 1.6.

[18] *Id.*, para. 2.2.

where a judgment, settlement, or other relief is obtained on account of the causes of action giving rise to the 'Lawsuits'."

21.    Paragraph 1.5 of the contract defines "Lawsuits" broadly.  The contract defines the Defendants' "Lawsuits" as "all accounts", whether now owned or later acquired by the Defendants, arising out of or in connection with the Defendants rendering of services, including, without limitation, the Defendants' right to be compensated for their services and reimbursed for related costs and expenses incurred, amounts disbursed or obligations incurred for the account of the Defendants' clients for fees paid or payable to or goods or services obtained from the Defendants' partners and employees of third parties, regardless of whether the Defendants rendered a bill for the services or disbursements or entered the value of the services or disbursements in their books as accounts receivable, and regardless of whether the services or disbursements have been completed.

22.    For purposes of the term "Lawsuits" and the Defendants' right to be compensated for their services and reimbursed for related costs and expenses incurred in "Lawsuits", it is also immaterial whether the Defendants have an express or implied agreement for compensation for their services or reimbursement in the "Lawsuits".

23.    Moreover, for the term "Lawsuits" in the contract and the Defendants' right to be compensated in "Lawsuits", the term encompasses all the Defendants' rights as of February 23, 2007 and those rights thereafter obtained by the Defendants ". . . . in and to all retainer agreements, security agreements and other contracts securing or otherwise relating to any such accounts."

24.    The Defendants assigned their account lien rights against the "Recovery" in "Lawsuits" to Allied Esquire.  For example, under para. 3.1 of the contract, the Defendants

9

granted Allied Esquire a continuing security interest in the Lawsuits, to secure payment and performance of the Defendants' obligations to Allied Esquire under the contract.  Under para. 6.3 of the contract, the Defendants agreed that Allied Esquire ". . . has a substantial interest in the successful resolution of each of the Lawsuits defined herein."

25.     Under para. 3.2 of the contract, the Defendants authorized Allied Esquire to file a UCCC-1 financing statement with appropriate state officials.

26.     Paragraph 3.2 of the contract also authorizes Allied Esquire to ". . . .take any other action reasonably necessary to give notice to persons of Lender's (Allied Esquire's) interest in the Lawsuits and of Attorney's [the Defendants'] obligation to Lender [Allied Esquire]."

27.     In para. 3.3 of the contract, the Defendants agreed that any lien in favor of the Defendants against the "Recovery for fees and costs is *assigned* to Lender [Allied Esquire] as additional funds available before the 'Payment Obligation'."

28.     Under the contract, the Defendants agreed to notify the Plaintiff within 2 business days of the payment of any recovery in each lawsuit, and agreed to hold any recovery in a separate interest bearing trust account for the Plaintiff until the Defendants' payment obligation was paid in full.[19]

29.     Under paragraph 6.2 of the contract, the Defendants agreed to indemnify and hold the Plaintiff harmless from, and to reimburse the Plaintiff for, all claims, losses, liabilities, obligations, damages, penalties, and expenses, including attorneys' fees, the Plaintiff sustained because of the Defendants breach of the contract.[20]

---

[19]*Id.*, para. 2.3.

[20](Req. Admiss. 1; **Doc. 53-2**).

30.     Under paragraph 6.1 of the contract, the Defendants waived any defense to the payment of the sums due to the Plaintiff under the contract.[21]   Under the contract, the Defendants agreed to provide the Plaintiff quarterly reports that contained a case status update for each lawsuit that was the subject of the contract.[22]

31.     Under paragraph 6.7 of the contract, the Plaintiff is entitled to liquidated damages in the amount of 2 times the payment obligation if the Defendants breach the contract.[23]

32.     After February 23, 2007, the Defendants failed to notify the Plaintiff within 2 business days of the payment of any recovery in each lawsuit.[24]   After February 23, 2007, the Defendants failed to timely repay the Plaintiff within 3 business days of the Defendants' receipt of the recovery in each lawsuit.[25]

33.     After February 23, 2007, the Defendants failed to timely repay the Plaintiff from the cash proceeds from the recovery in each lawsuit.[26]   After February 23, 2007, the Defendants failed to provide the Plaintiff quarterly reports that contained a case status update for each lawsuit that was the subject of the contract.[27]

---

[21](Req. Admiss. 2).

[22]**Doc. 53-1**; para. 6.5.

[23](Req. Admiss. 3; **Doc. 53-2**).

[24](Req. Admiss. 4).

[25](Req. Admiss. 5).

[26](Req. Admiss. 6).

[27](Req. Admiss. 7).

34.     After February 23, 2007, the Defendants exercised dominion and control of money in a separate trust account described in paragraph 2.3 of the contract, in a manner inconsistent with the Plaintiff's right to the separate trust account money.[28]

35.     Under the contract, the Defendants had duties to give the Plaintiff notice of the payment of any recovery in each lawsuit, to hold any recovery in an interest bearing trust account for the Plaintiff, and to promptly pay the Plaintiff from the money held in a separate interest bearing trust account until the Defendants' payment obligation was paid in full.[29]

36.     After February 23, 2007, the Defendants failed to comply with the contract, under which they had a duty to protect the Plaintiff's rights in money held in a separate trust account under paragraph 2.3 of the contract.[30]

37.     The Defendants used for themselves the money that the Defendants should have held for the Plaintiff in a separate, interest bearing trust account under paragraph 2.3 of the contract.[31]

38.     In the Defendants' June 14, 2011 deposition (**Plaintiff's Motion, Ex. 3, Byrd Depos.; Doc. 53-3**), the Defendants admitted facts, including the following:

1.     the execution of the contract; (**Byrd Depos., at 10-11**)

2.     payment obligations under the contract and the contract's other obligations, and the default under the contract;  (***Id.*, at 11-12, 15-20, 23, 27-28, 37-58, 60-67, 69, 84-129**)

---

[28] (Req. Admiss. 8).

[29] (Req. Admiss. 9).

[30] (Req. Admiss. 10).

[31] (Req. Admiss. 11).

3. the Defendants knowingly and intentionally, and therefore willfully, followed their own protocol and kept, used, and converted specific money belonging to the Plaintiff with substantial certainty that their actions would cause injury and damage to Allied Esquire. *Id.*

39. The Declarations of Lew Fidler and Wynn E. Clark are part of the summary judgment record. (**Plaintiff's Motion**, **Exs. 4 and 5; Docs. 53-4 and 53-5**). The Fidler Declaration shows that the Defendants made partial payments to the Plaintiff at various times in 2008 and 2009 that collectively total $155,000.00. The Fidler Declaration shows that the Defendants owe the Plaintiff $862,218.27 for funding fees and principal, after credit is given for partial payments, but before any consideration of the Plaintiff's attorney fees and expenses that are recoverable under the contract. (**Doc. 53-4, at 3**). Fidler's Declaration shows that the Plaintiff retained its counsel in this case, and that the attorney's fees and expenses the Plaintiff has incurred in enforcing its rights are shown in its counsel's Declaration. (**Doc. 53-4, at 4**). The Plaintiff's counsel's Declaration shows that as of June 30, 2011, the Plaintiff had incurred attorney's fees and litigation expenses of $23,391.24. (**Doc. 53-5, at 1-22**).

40. Despite denying liability in their Answers (**Docs. 3, at 4, and 4, at 4**), the Defendants admit they were aware from the beginning of their obligations to pay Allied Esquire from the recovery in the Defendants' legal cases, and now admit they are liable to the Plaintiff. (**Byrd Depos., at 57-61, 69-70, 98, 122-28; Doc. 53-3**). When the Defendants answered the Complaint, they knew of the contractual obligation to pay Allied Esquire "money out of any case that I[32] had." *Id.*, at 98.

41. The Defendants admit receiving an advance of $450,000.00 from Allied Esquire under the Funding Agreement, and admit they have to pay 25% of the "Net Cash

---

[32]Byrd and the Byrd Firm.

Receipts" from the "Lawsuits" the Byrd Firm and Byrd handled to comply with the "Payment Obligation". *Id.*, at 38, 47-48. Byrd testified that once the Funding Agreement was signed, the Defendants agreed to abide by the contract. *Id.*, at 52, 56. Byrd was aware there was an obligation to Allied Esquire from the fees coming on the Byrd firm's cases, and he admitted "every phase of this contract . . . .every line of this contract." *Id.*, at 61. Byrd testified that he was aware from the beginning of his obligations to Allied Esquire.

42.    Byrd's multiple admissions of liability to Allied Esquire (for example, Byrd Depos. 86) are apparent. But it is also apparent from the beginning of the contract relationship in 2007 that the Defendants knowingly and intentionally, and therefore willfully, followed their own protocol contrary to the express contract provisions. By doing so, the Defendants intentionally kept, used, and converted specific money belonging to Allied Esquire, with substantial certainty that their actions would cause injury and damage to Allied Esquire.

43.    From the beginning, the Defendants decided not to give collateral reports and status reports required by the contract. (**Byrd Depos. 16-17; Doc. 53-3**). The Defendants from the beginning decided not to set up a separate interest-bearing trust account to deposit and hold in trust for Allied Esquire the net cash proceeds from settlement of the Byrd Firm's cases. *Id.*, at 12, 18, 20, 23, 50-51.

44.    From the beginning, the Defendants did not give Allied Esquire 2 days contractual notice when the Defendants received a fee the Defendants knew they had assigned to Allied Esquire. *Id.*, at 12, 15, 27, 48, 50-51. It was the Defendants' intention not to give Allied Esquire notice. *Id.*, at 48. The Defendants were aware of their obligations to Allied Esquire from the beginning of the contractual relationship. *Id.*, at 61.

45.     The Defendants decided from the beginning not to establish a separate interest bearing trust account for Allied Esquire and not to pay Allied Esquire any net cash proceeds of any earned fee and expense reimbursements in legal cases within 3 business days.  Byrd testified, "I was going to pay them in lump sums and get it over with, without going through all of that. . . .I had to rob Peter to pay Paul. . . ."  *Id.*, at 23-25.  Byrd intended to take two or three settlements within a year that were large enough to pay off Allied Esquire.  *Id.*, at 38.  Instead of following the contract, the Defendants resolved that they were going to ignore the contract provisions, all without telling Allied Esquire.  *Id.*, at 38-39, 48-52, 55.

46.     The Defendants knew they were doing something contrary to the contract with Allied Esquire.  *Id.*, at 58.  Within about 1 month before suit was filed, the Defendants settled the Shirley (redacted) case and received a six figure fee, and failed to pay Allied Esquire, despite notice two years earlier from Allied Esquire that the Defendants had "failed to pay. . . .a percentage of all revenues you have received from your practice."  *Id.*, at 85, 98, 119-128.  The Defendants have in fact improperly assigned their earned fees and expenses to third parties other than Allied Esquire.  *Id.*, at 126.

47.     The Defendants improper conduct continued, even after Allied Esquire filed suit on August 12, 2010, and has continued up to the June 14, 2011 deposition.  *Id.*, at 17-18, 59-61, 128.

48.     The Defendants admit that in every Byrd Firm/Byrd legal case since the beginning of the contractual relationship, the Defendants did not specifically hold out money in a separate interest-bearing trust account for Allied Esquire, and have been continuing to take fees and expenses and use them for their own benefit, even though Allied Esquire

is entitled to the money.  *Id.*, at 118-28.  The Defendants' acts have been intentional.  *Id.*, at 128.

49.    Although ordered by the Court on May 3, 2011 (**Doc. 29, at 2**) to serve written responses to discovery requests that would have quantified how much of Allied Esquire's money the Defendants had kept for themselves, the Defendants failed to comply with the Court's Order. Plaintiff's counsel asked the written Interrogatories and Requests For Production as deposition questions in the Defendants' June 14 deposition.  (**Byrd Depos., at 12-13; Doc. 53-3**).

50.    The Defendants were only slightly more helpful in the deposition about quantifying how much money they had taken that belonged to Allied Esquire, explaining that one could take the settlement sheets for 2007 through 2011 and do the math from the attorney's fees and expenses.  *Id.*, at 14, 17, 20-22, 27-29, 33, 70-71, 110-11, 118.

51.    Allied Esquire has quantified what is due from the Defendants as of July 1, 2011, which is $862,218.27, but does not include attorney's fees and expenses and liquidated damages.  (**Ex. 4, Fidler Declaration, paras. 8-9; Doc. 53-4**).  Allied Esquire does not pursue liquidated damages under para. 6.7 of the contract.  (**Ex. 1, at 5, para. 6.7**).

52.    From the Defendants' duties to establish a separate interest bearing trust account and safeguard the trust account money for the benefit of the Plaintiff, and then to account to the Plaintiff for money controlled by the Defendants that should have been placed in the trust account, the Defendants had a position of trust with the Plaintiff that gives rise to a fiduciary relationship.  There is no question that Allied Esquire agreed to the Funding Agreement based on the express and implied promises in the contract.  There is

no question that the Defendants have been unjustly enriched by their breach of trust and abuse of a fiduciary relationship with the Plaintiff.

53.    From the deposition and deposition exhibits presented to the Court under seal, the Defendants have been unjustly enriched by reaping substantial monetary benefits by earning legal fees and recouping expenses, and then not paying Allied Esquire.  Byrd's tax records from 2007 through 2009 shows substantial gross receipts and income, augmented by the Defendants' willful conversion of Allied Esquire's money.  (**Byrd Depos., at 40-46; Doc. 53-3**).

54.    The Defendants have a relationship with respect to the Plaintiff and the past and future fees and reimbursements the Defendants earned and will earn from any "Recovery" in the Defendants' "Lawsuits", such that the Defendants have been, and will be, unjustly enriched if permitted to retain the Plaintiff's portion of the recovery.

55.    The Defendants maintained dominion and control over the fees and reimbursements that should have been placed in the trust account, and have interfered with the Plaintiff's superior right and interest in the fees and reimbursements from the Defendants' legal cases that should have been placed in the trust account and paid to the Plaintiff.  The fees and reimbursements from the Defendants' legal cases are the specifically identifiable funds that the Defendants exercised an unauthorized dominion over, to the exclusion of the Plaintiff's rights.

**Conclusions Of Law**[33]

56.     The contract has a choice of law provision that selects New York law as the governing law.  (**Doc. 53-1, at 7; Contract, para. 6.18**).  As the parties have decided which state's law will govern their agreement, the Court applies New York law.  *Herring Gas Co., Inc. v. Magee*, 22 F.3d 603, 607 (5th Cir. 1994) ("Under Mississippi law, contracting parties can decide which state's law will govern their agreement."); *Miller v. Fannin*, 481 So.2d 261, 262 (Miss. 1985) (court will give effect to express agreement that laws of specified jurisdiction will control).

57.     There is no genuine issue of material fact about whether the Plaintiff is entitled to recover damages and entitled to relief on all claims for breach of contract and declaratory relief; breach of fiduciary duty and constructive trust; and conversion, with damages, attorney's fees, and expenses.

58.     Allied Esquire Group, Inc. is entitled to summary judgment against the Defendants, jointly and severally, on all claims including breach of contract; declaratory relief; breach of fiduciary duty and constructive trust; and conversion based on (1) the contract (**Plaintiff's Motion, Ex. 1; Doc. 53-1**); (2) the Defendants' admissions in their Answers (**Docs. 3 and 4**); (3) the Defendants' deemed admissions to Requests For Admission (**Plaintiff's Motion, Ex. 2; Doc. 53-2**) to which the Defendants did not respond; (4) the Defendants' combined Fed.R.Civ.P. 30(b)(6) and individual deposition (**Plaintiff's Motion, Ex. 3; Doc. 53-3**); and (5) the Declarations (**Plaintiff's Motion, Exs. 4 and 5; Docs. 53-4 and 53-5**).

---

[33]If any conclusions of law partake of findings of fact, they are deemed findings of fact as well as conclusions of law, and *vice versa.*

59.     The Plaintiff has quantified its damages, attorney's fees, and expenses through Declarations made under 28 U.S.C. §1746, as well as the Defendants' deposition admissions.

60.     A claim for breach of contract under New York law requires evidence of (1) a contract; (2) the Plaintiff's performance under the contract and Defendants' breach of the contract; and (3) damages resulting from the breach.  *Elisa Dreier Reporting Corp. v. Global NAPS Network, Inc.*, 921 N.Y. S.D. 329, 333 (App. Div. 2011).  It is plain that the Defendants breached the Funding Agreement, and the Plaintiff sustained damages of $862,218.27 as a result of the breach, not including Allied Esquire's attorney's fees and expenses.  (**Ex. 4, Fidler Declaration, paras. 8-9; Doc. 53-4**).

61.     There was a breach of fiduciary duty by the Defendants that justifies the imposition of a constructive trust.  The facts show that an officer of the Court and his law firm took a substantial amount of money from Allied Esquire, and agreed to "hold any recovery in a state bar interest bearing trust account" for Allied Esquire until the Defendants' payment obligation was paid in full.  (**Ex. 1, Contract, para. 2.3**).  The Defendants agreed that any lien in favor of the Defendants against a "Recovery" for fees and costs in "Lawsuits" is assigned to Allied Esquire for the "Payment Obligation."  *Id.*, para. 3.3.

62.     The Defendants agreed that their contract representations, warranties and covenants will "survive the closing and continual in full force and effect" until Allied Esquire has received the payment obligation.  *Id.*, para. 6.1.  And the Defendants agreed that if they breached the Funding Agreement, Allied Esquire is entitled to "equitable relief as may be appropriate, including an order for specific performance."  *Id.*

63.    To establish a constructive trust, a plaintiff must prove: (1) the existence of a fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment.  *Bankers Security Life Insurance Society v. Shakerdge*, 406 N.E.2d 440 (N.Y. 1980); *Depena v. Shocker*, 922 N.Y.S.2d 119, 120-21 (2d Dep't. 2011) (constructive trust may be imposed when property has been acquired under circumstances that the holder of the legal title may not, in good conscience, retain the beneficial interest; elements of a constructive trust are: (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment).

64.    The evidence and the equities support the imposition of a constructive trust in favor of Allied Esquire until the amount of money awarded the Plaintiff is paid in full, as follows.  The Plaintiff is entitled to a constructive trust on 25% of the "Net Cash Receipts" (contract, para. 1.4) that was and is derived from all past and *future* fees and case expense reimbursements the Defendants earned and will earn from any "Recovery" (contract, para. 1.6**; Doc. 53-1**) in the Defendants' "Lawsuits" (contract, para. 1.5**; Doc. 53-1**), that also are linked to and bound by the Defendants' "Payment Obligation" to Allied Esquire under paras. 1.4, 2.2, and 2.3 of the contract.

65.    The Defendants are therefore ordered to hold 25% of the "Net Cash Receipts", as defined in para. 1.4 of the contract, from the "Recovery" in "Lawsuits" as defined in paras. 1.6 and 1.5 of the contract, as a constructive trustee for the use and benefit of Allied Esquire, in a separate interest bearing trust account for Allied Esquire and give notice to Allied Esquire and pay Allied Esquire 25% of the "Net Cash Receipts" in compliance with the contract from this day forward, until the Defendants' "Payment Obligation" and the amount of money awarded the Plaintiff in this Judgment is paid in full.

66.    Allied Esquire is entitled to declaratory relief declaring the rights of the parties to the contract, and specifically declaring:

a.    the imposition of a constructive trust in favor of Allied Esquire described above, and the account lien rights of Allied Esquire (contract, **Doc. 53-1**, paras. 3.1, 3.2, 3.3), that is, that Allied Esquire has the superior right to any lien the Defendants have against any "Recovery" for fees and costs in the Defendants' "Lawsuits", which the Defendants assigned to Allied Esquire;

b.    that Allied Esquire may take action to notify the parties to, and those persons involved in, the Defendants' "Lawsuits" that Allied Esquire has the rights described in paras. 56-74 of the Findings Of Facts and Conclusions Of Law and also described in the contract;

c.    that Allied Esquire is entitled to indemnity, attorney's fees, expenses, and the relief specified in paras. 6.2 and 6.15 of the contract; and

d.    that the Defendants must in the *future* comply with all provisions of the contract, including, but not limited to, complying with the "Payment Obligation" (paras. 1.4, 1.5, 1.6, 2.2), the notice provision (para. 2.3), the collateral and quarterly reports provision (paras. 6.3, 6.4, 6.5, 6.6), and the establishment of an interest bearing trust account for Allied Esquire, the funding of that trust account, and the timely payment of the "Net Cash Receipts" to Allied Esquire until the "Payment Obligation" is paid in full. (para. 2.2).

67.    The evidence shows that the Defendants knowingly and willfully, and therefore intentionally, converted funds the Defendants had assigned to Allied Esquire and agreed would be put in an interest bearing trust account for Allied Esquire.

68.    To establish conversion under New York law, a plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing, and that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights.  *e.g.*, *Palermo v. Taccone*, 913 N.Y.S.2d 859, 863 (App. Div. 2010).

69.    Two key elements of conversion are: (1) the plaintiff's possessory right or interest in the property, and (2) the defendant's dominion over the property or interference

with it, in derogation of the plaintiff's rights.  *Id.* at 853.  As to funds, a claim for conversion of funds must allege legal ownership or an immediate right of possession to specifically identifiable funds, and that the defendant exercised an unauthorized dominion over such funds to the exclusion of the plaintiff's rights.  *e.g.*, *Zendler Construction Co. v. First Adjustment Group, Inc.*, 873 N.Y.S.2d 134, 136 (App. Div. 2009).

70.     A claim for conversion requires an intentional act in assuming or exercising control over personal property belonging to the plaintiff.  *Palermo*, 913 N.Y.S.2d at 863. The Defendants' acts were intentional and willful and done with substantial certainty of harm to Allied Esquire.

71.     The "Recovery" and the "Net Cash Receipts"  from "Lawsuits" that should have been placed in an interest bearing trust account is the specific identifiable funds necessary for conversion.  Allied Esquire is entitled to recover for willful conversion.

72.     Allied Esquire is entitled to Judgment against the Defendants, jointly and severally, in the amount of $885,609.51, which includes $862,218.27 and attorney's fees of $18,957.75 and expenses of $4,433.49, with interest on the Judgment at the legal rate.

73.     The damages award of $885,609.51 overlaps the measure of monetary damages on other legal claims for monetary relief besides breach of contract.  As the damages award of $885,609.51 subsumes the monetary damages relief on Allied Esquire's other legal claims for monetary relief, the Court does not address further the extent of monetary damages for conversion or breach of fiduciary duty.

74.     Allied Esquire is entitled to attorney's fees and its litigation expenses (**Exs. 4 and 5; Docs. 53-4 and 53-5**) under the contract, with costs taxed to the Defendants, and legal interest.  The Defendants are jointly and severally liable to Allied Esquire.

**IT IS, THEREFORE, ORDERED AND ADJUDGED that** Allied Esquire Group, Inc.'s

Motion For Summary Judgment (**Doc. 53**) is granted on the Plaintiff's claims for legal and

equitable relief against the Defendants, jointly and severally, as follows:

1.  Allied Esquire Group, Inc. is granted Judgment against the Defendants, jointly and severally, in the amount of $885,609.51, which includes $862,218.27 and attorney's fees of $18,957.75 and expenses of $4,433.49, with interest on the Judgment at the rate declared by 28 U.S.C. §1961 from the date of Judgment;

2.  Allied Esquire Group, Inc. is entitled to declaratory relief against the Defendants that declares and establishes the rights of Allied Esquire Group, Inc. described above in paras. 56 to 74;

3.  Allied Esquire Group, Inc. is entitled to a constructive trust on 25% of the "Net Cash Receipts" that was and is derived from all past and future fees and case expense reimbursements the Defendants earned and will earn from any "Recovery" in the Defendants' "Lawsuits", as described above in paras. 61 to 66(a-d).

The Court will enter a separate Judgment, incorporating these Findings Of Facts and

Conclusions Of Law, in accordance with Fed.R.Civ.P. 58(a).

**SO FOUND AND ORDERED, on this 25th day of August, 2011.**

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE